Charles J. PETERS

v.

The UNITED STATES.

No. 470–73.

United States Court of Claims.

Dec. 17, 1975.

See also Ct.Cl., 534 F.2d 237.

Charles J. Peters, pro se.

R. W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen., Rex E. Lee, Washington, D. C., for defendant.

Before DAVIS, SKELTON and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

The basic problem in this *pro se* civilian pay case is whether the Associate General Counsel of the Federal Aviation Administration (FAA) is entitled to the higher pay and retirement benefits of Deputy General Counsel because he was not promoted to the higher post as a result of alleged arbitrary and capricious action by the Civil Service Commission (CSC). We hold the actions of the CSC *not* to have been arbitrary and capricious.

The matter comes before the court on defendant's and plaintiff's cross motions for

summary judgment. The facts are not complicated and are basically non-contested.

In 1968, plaintiff was a GS–16 Associate General Counsel at the FAA. On January 8, 1968, he was designated Acting Deputy General Counsel. The post of Deputy General Counsel was then a GS–17 position, but as plaintiff was only "acting," he was paid at his GS–16 appointment rate. On September 10, 1968, the Acting FAA Administrator approved a recommendation that plaintiff be promoted to the GS–17 position of Deputy General Counsel. The Office of the Secretary of Transportation (OST) Executive Personnel Board concurred and the "Request for Approval of Executive Selection" was sent by the Secretary of Transportation to the CSC on *December 27, 1968,* for the purpose of obtaining CSC approval of plaintiff's qualifications under 5 U.S.C. § 3324 (1970).[1]

On *January 22, 1969,* the CSC returned a list of high-level personnel proposals, including plaintiff's, to the Department of Transportation (DOT), commenting, *inter alia,* that "rather than proceeding with the processing of these cases, we are sending them back to you to ascertain whether the proposed actions are in keeping with the Department's *program needs and priorities* at this time." (emphasis added). Plaintiff served as Acting Deputy General Counsel until February 22, 1971, and finally retired on June 29, 1973. That plaintiff performed his duties in an exemplary fashion is not at issue in this case. He now claims both pay and retirement annuity accretions based on the difference between the amounts he received in his GS–16 position and that which he would have received as a GS–17.

Plaintiff has never asserted his claim administratively.

The gravamen of plaintiff's argument is that the CSC acted illegally, arbitrarily and capriciously in failing to process DOT's recommendation for his appointment as Deputy General Counsel. Plaintiff also alleged certain improprieties in being kept overly long in an "acting" capacity by FAA.

Defendant counters that CSC's action was a proper exercise of administrative discretion and that plaintiff had an obvious and clear administrative remedy against serving overly long in an acting capacity which he failed to use.

We hold for the government.

■ First and foremost, it is patently clear that in spite of any implication to the contrary, plaintiff was never officially appointed to the position of Deputy General Counsel.[2] Sundry proposals may have been made to promote him, but the facts are clear—no appointment was ever consummated. This court has repeatedly held that a government employee is entitled only to the rights and salary of the position to which he has been appointed. *Desmond v. United States,* 201 Ct.Cl. 507, 525–26 (1973); *Bielec v. United States,* 456 F.2d 690, 696, 197 Ct.Cl. 550, 560 (1972); *Dianish v. United States,* 183 Ct.Cl. 702, 707 (1968). Thus plaintiff is not entitled to higher pay by virtue of serving in a GS–17 position to which he was never appointed.

■ Nor does plaintiff derive any legal entitlement to the higher pay of a GS–17 position from any specific statute or regulation. And he has cited none. For the court to order a promotion where the agency has failed to do so there must be a clear legal entitlement to such promotion.[3] *Cf. Selman v. United States,* 498 F.2d 1354, 1359, 204 Ct.Cl. 675, 686 (1974); *Doggett v. United States,* Ct.Cl. No. 459–73 (Slip Opinion July 11, 1975). If plaintiff's argument has a major defect, it is obviously here. *He was simply never entitled to the higher position.*

---

1. U.S.C. § 3324 (1970) requires CSC approval of qualifications for all appointments to GS–16, 17, or 18 supergrade positions unless the position is exempt from such approval.

2. Actually, plaintiff now appears to concede that he never received the appointment. At oral argument, he no longer claimed he had received it.

3. *See* also *Skrobot v. United States,* Ct.Cl., 534 F.2d 237, released today.

■ However, plaintiff claims his extended, overly long detail as Acting Deputy General Counsel violated 5 U.S.C. § 3341 (1970)[4] and constituted an unjustified or unwarranted personnel action under the Back Pay Act, 5 U.S.C. § 5596 (1970).[5] He now alleges it was improper for him to have been kept in an acting capacity for over 120 days. Yet he never moved administratively to bring the detail to an end. We have held that the failure to exhaust doctrine applies to administrative appeals within an agency. *Perkitney v. United States,* 174 Ct.Cl. 79, 84–85 (1966). As Acting Deputy General Counsel, plaintiff was in as good a position as anyone to call to the FAA's attention the possible illegality of his position. Yet for over two years he was obviously satisfied to "let the matter ride." If, as plaintiff now appears to contend, the overly long detail constituted an unwarranted personnel action, he could have and should have instituted a CSC grievance proceeding. 5 C.F.R. § 771.302 (1974).[6] Strangely, or perhaps not so strangely, plaintiff was willing to retain his Acting Deputy General Counsel status beyond the 120 day limit and benefit thereby to the extent he retained his prospects for promotion. This extended detail also serves as a foundation for plaintiff's present claim. Having accepted the benefits of the detail, plaintiff is now estopped to attack its legality. *Steuer v. United States,* Ct.Cl. No. 174–72 (Slip Opinion June 25, 1975); *Weir v. United States,* 474 F.2d 617, 622, 200 Ct.Cl. 501, 511 (1973), *cert. denied,* 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973); *Henneberger v. United States,* 407 F.2d 1340, 1341, 187 Ct.Cl. 265, 267 (1969).

■ In addition, since plaintiff suffered no withdrawal or reduction of pay as a result of his "acting" capacity, we cannot say he was the victim of an adverse personnel action under the Back Pay Act, 5 U.S.C. § 5596(b), *supra.* Plaintiff was a free agent. He could have remained as Acting Deputy General Counsel; he could have requested to be relieved; he could have brought appropriate administrative action. He chose to stay, and cannot now be heard to contest the legality of the detail. Simply stated, plaintiff cannot have it both ways. *Steuer, supra; Weir, supra; Henneberger, supra.*

Plaintiff has raised other minor contentions such as the existence of an implied contract between FAA and plaintiff. He also alleged improper delays in the OST. We find no merit in these points and, therefore, reject them.

■ Thus we are left with the principal thrust of plaintiff's argument—the allegation that the CSC acted arbitrarily and capriciously in failing to process DOT's recommendation appointing him Deputy General Counsel.

On December 27, 1968, plaintiff's proposed appointment was forwarded by the Secretary of Transportation to the CSC for appropriate and required approvals. This action took place almost two months after a national election in early November. Just a few weeks after receipt of the proposal, a new federal administration took office. Defendant argues the CSC did not have time enough to process all papers before January 20, and therefore returned the pro-

---

4. 5 U.S.C. § 3341 (1970) provides in part:
   "(a) the head of an Executive department * * * may detail employees among the bureaus and offices of his department * * *.
   "(b) Details under subsection (a) of this section * * * may be for not more than 120 days. These details may be renewed by written order of the head of the department, in each particular case, for periods not exceeding 120 days."

5. 5 U.S.C. § 5596(b) (1970) provides a remedy for:
   "An employee of an agency who, on the basis of an administrative determination or a timely

appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee— * * *."

6. 5 C.F.R. § 771.302 (1974) provides that an employee may bring a grievance action unless specifically excepted:
   " * * * this subpart [agency grievances] applies to any matter of concern or dissatisfaction to an employee which is subject to the control of agency management."

posal concerning plaintiff, along with requests for approval of 19 other named individuals and eight requests for positions for which no appointees had been designated, to the DOT on January 22, 1969.

Plaintiff makes blunt allegations of political machinations in these actions, suggesting the CSC was thereby somehow involved in political clearances. Unfortunately for plaintiff, these allegations are totally unsubstantiated by the record before us.[7]

Plaintiff couches his charges in "arbitrary and capricious" language. He alleges the CSC acted illegally, arbitrarily and capriciously to prevent the FAA from implementing its decision to promote plaintiff. Again, there is nothing in the record which proves improper motive on the part of the two Civil Service Commissioners. All indications point to the contrary. Plaintiff's appointment to the GS–17 Deputy General Counsel position required CSC approval *both* as to (1) the availability of the GS–17 supergrade for that position, 5 U.S.C. § 5108 (1970),[8] and (2) the appointment of plaintiff to the position, 5 U.S.C. § 3324 (1970).[9]

The government submits that the CSC action in returning the Request for Approval to DOT was in no way arbitrary or capricious, and its decision to permit the new Administrator to consider the allocation of the limited number of supergrade positions available was a proper exercise of administrative discretion.

We agree. Plaintiff cites no statute or regulation forbidding the CSC from sending back the proposals in this instance. The Commissioners' action was not unreasonable, but most sensible under the circumstances. We hold the decision of the CSC to have been an eminently sound exercise of administrative discretion in no way illegal, arbitrary or capricious.[10]

Our views would be the same whether an administration changed from Party A to Party B, from Party B to Party A, or switched Presidents within the same Party.

Finally, if by any stretch of legal imagination this case should further be considered from the aspect of our "power to promote," it has long been settled law that this court will not substitute its judgment for agency discretion by ordering promotions where the agency has declined to do so. *Hirsch v. United States,* 499 F.2d 1248, 1250, 205 Ct.Cl. 256, 260 (1974); *Wienberg v. United States,* 425 F.2d 1244, 1251, 192 Ct.Cl. 24, 35 (1970); *Tierney v. United States,* 168 Ct.Cl. 77, 80 (1964).

In summary, we have here a plaintiff who is an able attorney, arguing his own case *pro se.* For reasons unknown to this court and not a part of the record, he failed of appointment to the position of FAA Deputy General Counsel. This is not the first time such an event has taken place, nor is it likely to be the last. Plaintiff was never at any time officially appointed to the higher position he now seeks. No special statute

---

7. Interestingly, on the crucial date herein specified (January 22, 1969), the CSC consisted of one Commissioner appointed from each major political party, and one vacancy. Therefore, it would have been extremely difficult mathematically for any political party to control actions of the CSC absolutely at that particular time. Here again, the record fails to substantiate plaintiff's open suggestion of political machinations.

8. 5 U.S.C. § 5108(a) (1970) provides in part:
   "A majority of the Civil Service Commissioners may establish, and from time to time revise, the maximum numbers of positions * * * which may be placed in GS–16, 17, and 18 at any one time * * *. A position may be placed in GS–16, 17, or 18 only by action of, or after prior approval * * *."

9. 5 U.S.C. § 3324(a) (1970) provides in part:
   "An appointment to a position in GS–16, 17, or 18 may be made only on approval of the qualifications of the proposed appointee by the Civil Service Commission."

10. It may also be noted that the CSC action was directed to *all* supergrade appointments then pending from the DOT which negates the possibility that plaintiff's own political affiliation was in any way involved. Where there is insufficient evidence in the record as a whole to support charges of political motivation by executive agency officials, the court will not find unlawful agency action. *Schmidt v. United States,* 153 Ct.Cl. 407 (1961), *cert. denied,* 368 U.S. 930, 82 S.Ct. 366, 7 L.Ed.2d 193 (1961).

or regulation gives him entitlement to the higher office. And further, we hold the Civil Service Commission was in no way arbitrary or capricious in returning plaintiff's appointment papers, together with others, to the Department of Transportation for appropriate resubmission after a change in administration.

Accordingly, plaintiff's motion for summary judgment is denied, defendant's cross motion for summary judgment is granted, and the petition is dismissed.