**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 22–H.

United States Claims Court.

Oct. 9, 1985.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

---

**1.** Defendant's motion to dismiss appended material outside the pleadings. However, this material was not considered in ruling on the claim at

## ORDER

NETTESHEIM, Judge.

On September 13, 1985, plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") moved pursuant to RUSCC 59(a) for reconsideration of the order entered on September 4, 1985, and for argument. Defendant has opposed. Argument is deemed unnecessary.

## FACTS

The September 4, 1985 order denied defendant's motion to dismiss plaintiff's claims in this litigation concerning erosion of reservation range lands, maximization of potential income from range lands, and suppression of water resources or rights under the *Winters* Doctrine. Defendant's motion to dismiss was granted with respect to plaintiff's claim that the United States had a legal obligation to develop all the potentially (or practicably) irrigable acreage on plaintiff's reservation.[1] *White Mountain Apache Tribe of Arizona v. United States*, 8 Cl.Ct. 677, 684 (1985) (the "September 4 order"). Plaintiff's motion for reconsideration contests as legally and factually incorrect dismissal of its claim for development of irrigable acreage.

Defendant by its initial brief relied upon *Gila River Pima-Maricopa Indian Community v. United States*, 231 Ct.Cl. at 193, 684 F.2d 852 (1982) (per curiam), for the propositions (1) that the Government was not under an obligation "to supply plaintiff with all the water necessary to irrigate 'all the practicably irrigable' acres of the Fort Apache Reservation" and (2) that, although defendant undertook to provide an irrigation system on the reservation, the Government had no legal duty "to build an irrigation system which was capable of irrigating all the irrigable acreage." Def's Mot. filed July 12, 1984, at 9 & n. 2, 10 (citing *Gila River*, 231 Ct.Cl. at 213–14, 684 F.2d at 864–65). *See also* Def's Br. filed Aug. 23, 1984 at 5 (reiterating its initial argument based upon the authority of *Gila River*).

issue, and the motion was deemed one to dismiss. *See* RUSCC 12(b).

In its opposition plaintiff did not attempt to distinguish its case from *Gila River*.[2] On reconsideration plaintiff says that it can show that the Government assumed the obligation to construct such systems that would make its reservation fully habitable and that the situation of plaintiff tribe is distinguishable factually from those of the tribes in *Gila River*.

## DISCUSSION

A party seeking reconsideration can bolster its arguments that relate to a ground previously urged. Plaintiff's opposition blurred discussion of its *Winters* Doctrine rights claim under *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), and *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963), with its separate claim for construction of irrigation systems. *See* Plf's Resp. and Resistance, filed Aug. 14, 1984, at 7–14. As to plaintiff's contention in its reconsideration motion that *Winters* and *Arizona v. California* equate the amount of reserved water to that necessary for irrigation of all practicably irrigable acreage, these cases provide no authority. How-ever, the claim that there was a specific number of acres that actually were cultivated belongs in this litigation as part of plaintiff's *Winters* Doctrine claim, because it deals with the quantification of the amount of water that was reserved. The determination concerning the quantity of water that should have been reserved to plaintiff's reservation shall be made consistent with the decision in *Gila River*.

As to plaintiff's contention in its reconsideration motion that *Winters* and *Arizona v. California* recognize an obligation on the part of the Government to construct irrigation systems that irrigate all practicably irrigable acreage, the court does not read the two Supreme Court cases as recognizing such an obligation.[3] Moreover, the Indian Claims Commission in *American Indians Residing on the Maricopa Ak-Chin Indian Reservation v. United States*, 31 Ind.Cl.Comm. 384, 388, 393 (1973), ruled that the legal duty to construct irrigation systems does not arise alone from undertaking to construct such facilities.[4] Here, defendant conceded in its

---

**2.** Plaintiff alleges in its motion for reconsideration that the court attributed to plaintiff a statement that defendant made in the latter's motion to dismiss. Plaintiff states: "Plaintiff Tribe likewise *refers to the fact* that the language quoted by the court that 'all the potentially or practicably irrigable acreage' is taken from the Department of Justice Motion to Dismiss." Plf's Mot. filed Sept. 13, 1985, at 2.

In plaintiff's response to defendant's interrogatories dated October 28, 1983, plaintiff adopted the statement of its claim as set forth by defendant:

22.A Does plaintiff assert that the United States had a legal obligation to develop all the potentially (or practicably) irrigable acreage on the reservation?

[Plaintiff's] Response: Affirmative.

Plaintiff had ample opportunity to take issue with this language. Including its response to defendant's interrogatories, plaintiff has filed, over a period of two years, three submissions, never once indicating that the language of interrogatory 22 did not represent its claim. Plaintiff, in fact, described its claim in terms similar to those used in interrogatory 22. For example, plaintiff states that the "Tribe is prepared to prove ... that it has approximately 50,000 acres of *irrigable land* which *should be developed*." Plf's Resp. and Resistance filed Aug. 14, 1984, at 14 (emphasis added). Finally, note 1 on page 5 of defendant's reply brief refers to the source material, *i.e.*, plaintiff's own statements, for defendant's description of plaintiff's claim.

**3.** The Supreme Court in *Winters* reasoned that the implied reservation of water rights was a more logical interpretation of an agreement with the Indians than the implied cession or relinquishment of water rights. What was implied was the retention of water rights and no more. In *Arizona v. California* the Court held, consistent with *Winters*, that the United States reserved water rights to Indians when the reservation was created. Neither case implies that the United States was obligated to construct irrigation systems for the claimants.

**4.** Absent agreement, order, treaty, or statute, the Commission, the Court of Claims, and the Claims Court have not found a duty to construct irrigation systems. In *Northern Paiute Nation v. United States*, 8 Cl.Ct. 470, 478 (1985), the court recognized a statutory obligation imposed upon the Government to provide an adequate irrigation system.

After the *Maricopa* case, in an effort "to resolve, without costly and lengthy litigation, the claims of the Ak-Chin Indians" concerning water resources, Congress enacted Pub.L. No. 95–328, 92 Stat. 409 (1978), thereby obligating the

motion to dismiss that the Government undertook to provide an irrigation system. The United States Court of Claims in *Gila River* held in these circumstances that defendant was not required to provide a system to irrigate all practicably irrigable acreage.

Plaintiff's claim was measured against defendant's dismissal motion under the standard that all allegations of fact will be accepted and construed in the light most favorable to plaintiff. *See* September 4 order, at 681 (citing cases). The claim in question was set forth in plaintiff's answers to interrogatories in combination with its petition. *See id.,* at 680, 683. To defeat defendant's motion, plaintiff had to plead a theory of its claim distinguishing its case from *Gila River* (which it did not) or assert such theory or facts in its opposition (which it did not). Indeed, plaintiff's only reference in opposition to *Gila River* was citing the case for the proposition that the Court of Claims has recognized the need for irrigation water on reservations. *See* Plf's Resp. and Resistance, filed Aug. 14, 1984, at 9 & n. 13. In short, plaintiff put nothing in the record to render *Gila River* inapplicable until it moved for reconsideration and then took sharp issue with defendant on the facts, offering no excuse for having failed to bring these facts to the court's attention before the order entered.

> [W]here a party adversely affected by the court's decision on the issue has had fair notice that the question may well be in the case, has had a fair chance to present its position, has failed to do so, and gives no sufficient excuse for its failure, a demand for post-decision relief will normally be rejected....

*General Electric Co. v. United States,* 189 Ct.Cl. 116, 117–18, 416 F.2d 1320, 1321 (1969) (per curiam) (motion for reconsideration denied). In *Frito Lay Inc. v. Canas,* 92 F.R.D. 384 (D.P.R.1981), defendant moved for reconsideration of an order granting plaintiff's motion for partial summary judgment. In denying defendant's motion, the court recognized that it "must ignore any 'facts' now raised" on reconsideration. 92 F.R.D. at 391.

Courts are particularly unreceptive to factual assertions, such as plaintiff's, that were available during initial briefing, but which surface on reconsideration. "[M]otions [for reconsideration ...] cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the [original motion].'" *Refrigeration Sales Co. v. Mitchell Jackson, Inc.,* 605 F.Supp. 6, 8 (N.D.Ill.1983) (citations omitted; first brackets in original) (quoting *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1983), *aff'd,* 735 F.2d 1367 (7th Cir.1984)). In *Refrigeration Sales* plaintiff, resisting defendant's motion for summary judgment, had failed to produce evidence in its own defense. Summary judgment was granted, and plaintiff moved for reconsideration and rehearing. Both motions were virtually identical, except that plaintiff appended two affidavits to its rehearing motion. Recognizing that the content of these affidavits did not constitute newly discovered evidence, the court denounced plaintiff's reservation of evidence and late proffer as a "piecemeal presentation of evidence" and an effort "to retry its case." 605 F.Supp. at 8–9; *see Delong v. Raymond Intern., Inc.,* 622 F.2d 1135, 1139–40 (3d Cir.1980) (upholding denial of reconsideration when additional documents and affidavits submitted with motion in absence of showing that materials initially were unavailable). *Canas* goes so far as to characterize a party's reservation of evidence for reconsideration as a matter of tactical judgment and indicates that under these circumstances a court is obligated to hold the party to its judgment and deny reconsideration. 92 F.R.D. at 391.

■ Although the cited cases arose on summary judgment, the principle applicable here is that an opposing party must meet a motion fairly or risk an adverse ruling. Congress, in its wisdom, determined that the amount of recovery in cases such as

---

Government to build irrigation facilities for these Indians.

this was to be determined in adversary proceedings. Allowing plaintiff to revive claims on motions for reconsideration based on facts that could have been argued when the matter was ruled upon negates the role of advocacy in litigation. Few are the parties claimant that are not in a better position, after an order enters resolving a contested matter, to argue against the order's legal and factual correctness. Our system of adjudication permits revisiting the law on reconsideration, because an appellate court reviews all legal arguments against a ground for decision. But the door closes on facts when a party has had full opportunity to adduce them. The principle supporting finality of judgments, *see Roche v. District of Columbia,* 18 Ct.Cl. 289, 290 (1883), applies with equal force to decisions resolving issues and claims in multi-issue complex cases upon which judgment does not enter immediately. The Court of Claims aptly stated a principle in 1883 of sustaining validity:

> The reargument of cases cannot be permitted upon the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged, with no more satisfactory results, as there would still be a losing party in the end.

*Roche, id.*

### CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

Plaintiff's motion for reconsideration is denied.