KEETON CORRECTIONS,
INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Dismas Charities, Inc., Intervening Defendant.

No. 04–132C.

United States Court of Federal Claims.

Sept. 23, 2004.

tiff's motion is **GRANTED–IN–PART** and **DENIED–IN–PART.**

## I. DISCUSSION

### A. Substantial Justification

■ The EAJA allows a court to award such fees to a prevailing party in a matter "brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government's position is substantially justified if it is " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). For purposes of making an award, the position of the United States is defined as "in addition to the position of the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Accordingly, "trial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991). Thus, the court must look at the "government's position throughout the dispute, including not only its litigating position but also the agency's administrative position." *Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir.1995) (citing *Gavette v. Office of Pers. Mgmnt.,* 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc)). While the EAJA is not a mandatory fee-shifting device, the government does have the burden of demonstrating that its position had a reasonable basis in law and fact. *See RAMCOR Servs. Group v. United States,* 185 F.3d 1286, 1290 (Fed.Cir.1999); *Lion Raisins, Inc. v. United States,* 57 Fed.Cl. 505, 512–13 (2003).

Keeton relies upon statements contained in the court's March 17, 2004 Opinion granting declaratory judgment as establishing that the agency's position was not substantially justified. As described in that Opinion, the un-

John G. DeGooyer, Washington, D.C., attorney of record for plaintiff.

David S. Silverbrand, Washington, D.C., Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director for defendant. Tracey L. Printer, Assistant General Counsel, Federal Bureau of Prisons, Of Counsel.

Daniel S. Herzfeld, Washington, D.C., Dismas Charities, Inc., defendant-intervenor.

## OPINION

MEROW, Senior Judge.

The matter is now before the court on plaintiff's ("Keeton") motion for an award of attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. In an earlier opinion, the court granted declaratory judgment holding that the Federal Bureau of Prison's ("BOP") override decision pursuant to 31 U.S.C. § 3553(d)(3)(C) lacked a rational basis. *Keeton Corr., Inc. v. United States,* 59 Fed.Cl. 753 (2004) (*Keeton I*), recons. denied, *Keeton Corr., Inc. v. United States,* 60 Fed.Cl. 251 (2004) (*Keeton II* ). Plaintiff seeks attorneys' fees of $29,443.32 and expenses in the amount of $2,282.41.[1] As part of its claim, plaintiff seeks a cost of living adjustment ("COLA") applied to the $125 hourly cap imposed by the EAJA. 28 U.S.C. § 2412(d)(2)(A)(ii). Defendant asserts three grounds for its objection to an EAJA award. First, it contends that the court should deny any recovery because the government's position during litigation was substantially justified. Second, defendant argues that Keeton should not be awarded full compensation because it did not prevail on all of its claims. Finally, the government objects to certain fees and expenses as unrelated to the current case. For the reasons stated below, plain-

---

1. *See* Reply of Keeton Corr., Inc. to Def.'s Opp'n to Pl.'s Application for Fees and Expenses Pursu- ant to the Equal Access to Justice Act ("Pl.'s Reply") at 12.

derlying case involved a BOP contract award to Dismas Charities, Inc. ("Dismas") to provide community correction center services in Memphis, Tennessee. After a second protest filed by Keeton before the General Accounting Office ("GAO"), the BOP implemented the automatic stay provided for under the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d). Upon expiration of Keeton's original contract and during the protest period, Keeton continued to perform through several sole source monthly purchase orders. However, the BOP subsequently issued a decision overriding the stay based on alleged urgent and compelling circumstances. 31 U.S.C. § 3553(d)(3)(C). Ultimately, the court held that the "BOP's determination and findings cannot withstand scrutiny under the rational basis standard of review. The January 21, 2004 override decision lacks the required rational basis and cannot be sustained." *Keeton I,* 59 Fed.Cl. at 759.

Defendant incorrectly argues that the court should focus solely on the government's litigating position and should not take into consideration the underlying agency action. As support for its proposition, the government relies upon *Spencer v. NLRB,* 712 F.2d 539, 552–53 (D.C.Cir.1983) and *Gava v. United States,* 699 F.2d 1367, 1371 (Fed.Cir.1983). However, these cases were decided before the 1985 amendment to the EAJA. Prior to this amendment, the courts were limited to evaluating the reasonableness of the government's position during the litigation. *See Chiu,* 948 F.2d at 714–15. However, the amendment clarified that the position of the United States "shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) ...." 28 U.S.C. § 2412(d)(1)(B); *Chiu,* 948 F.2d at 715. Supreme Court precedent also provides that "the EAJA establishes a clear threshold for determining a prevailing party's eligibility for fees, one that properly focuses on the governmental misconduct giving rise to the litigation." *Commissioner, INS v. Jean,* 496 U.S. 154, 165, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Thus, the proper focus of the court is to make a singular determination based on the entire civil action.

It is clear that the government's position is not substantially justified considering that the government has not disputed the unreasonableness of the underlying agency action and fails to prove that its litigating position was reasonably supported by fact or law. *Gonzalez v. United States,* 44 Fed.Cl. 764, 771 (1999) ("Given that the government makes no attempt in its opposition to plaintiff's EAJA petition to justify the agency's underlying conduct, the court finds that the government has failed to carry its burden of demonstrating that the government's position was substantially justified in law and fact."). The government asserted for the first time at oral argument and in initial briefing that implicit in the BOP's override decision was the conclusion that the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 13.003, prevented the use of continued purchase orders. The BOP's override decision itself "contained no reference to purchase orders and failed to provide a factual basis for the proposition that the BOP could no longer rely on purchase orders during the protest period." *Keeton I,* 59 Fed.Cl. at 756. The government can use simplified acquisition procedures, such as purchase orders, unless the agency could use "existing indefinite delivery/indefinite quantity contracts; or [ ] other established contracts." 48 C.F.R. § 13.003(a)(2)-(3). However, there was no factual or legal support in the administrative record for the agency's assumption that it could no longer rely upon purchase orders during the stay period. *Altos Fed. Group v. United States,* 60 Fed.Cl. 832, 834 (2004) ("Contrary to a case in which conclusions of the agency are 'rational and supported by the record,' the purported basis to justify the override decision was not mentioned at all in the May 28, 2004 override memorandum ....") (quoting *Sierra Military Health Servs., Inc. v. United States,* 58 Fed.Cl. 573, 581 (2003)).

In response to the court's request, defendant provided a supplement to the administrative record purporting to provide support for its apparent decision that it could no longer rely upon continued purchase orders. The only contemporaneous evidence relating to the BOP's consideration of purchase or-

ders was a draft determination and findings authorizing performance stating that the "BOP needs to get out of the month to month purchase order acquisition of services and proceed with the awarded contract." Notice of Filing of Supplement to Administrative Record ("Def.'s Supplement") at 9. However, the draft failed to provide any analysis or support for such a conclusion and failed to explain why continued purchase orders would be illegal. The defendant's attached affidavit stated that the BOP believed those purchase orders with Keeton, even before Dismas' facility was complete, violated a prohibition against fragmenting a contract. *See* Affidavit of Rebecca Canfield, Contracting Officer, BOP, Feb. 23, 2004, ¶¶ 6–7, Def.'s Supplement at 2. However, this post hoc rationalization was unsupported by law.

The government contends that its litigation position was substantially justified because it was required to apply a provision of the FAR that was not fully clarified by prior precedent. It asserts that its position during litigation that continued purchase orders were precluded was reasonable because there was alleged uncertainty regarding the application of 48 C.F.R. § 13.003 in this situation. *See Bowey v. West*, 218 F.3d 1373, 1377 (Fed.Cir. 2000) (Holding that the government's litigating position is "measured, not against the case law existing at the time the EAJA motion is decided, but rather, against the case law that was prevailing at the time the government adopted its position."). However, the government's position in this case was contrary to its arguments in previous cases regarding the use of purchase orders. In the District Court for the District of Columbia, the court accepted the government's argument that "good faith efforts to comply with CICA's mandate for competitive procurement will protect a procurement officer's decision-making from a potential legal challenge of fragmenting." *Petchem, Inc. v.*

*United States,* 99 F.Supp.2d 50, 56 (D.D.C. 2000).

The government's litigation position was also contrary to several GAO decisions demonstrating that sole source purchase orders during the automatic stay period were consistent with CICA.[2] *Master Sec., Inc.,* 1997 WL 11254, *6, B–274990, 97–1 CPD P 21 (Comp.Gen. Jan. 14, 1997) ("When an agency is faced with a critical need while being simultaneously unable to proceed with a fully competitive award for that item, it may properly use the small purchase procedures as an interim means to procure its needs until a fully competitive award is possible."); *Mas–Hamilton Group, Inc.,* 1992 WL 328756, 72 Comp. Gen. 6, 11, B–274990, 92–1 CPD P 259 (Comp.Gen. Oct. 20, 1992); *Unified Indus., Inc.,* 1990 WL 293799, B–241010, 70 Comp. Gen. 142, 145, 91–1 CPD P 11 (Comp.Gen. Dec. 19, 1990) (Holding that during the stay period, "agencies must have some method by which they can reliably meet ongoing requirements and at the same time preserve the opportunity for meaningful relief."). The government's position that it could no longer proceed with purchase orders because there was an established contract with Dismas was contradicted by counsel's statement that the BOP could proceed with purchase orders if the court reinstated the stay. *See* Tr. of Oral Argument at 23 (Feb.6, 2004). Thus, the government's litigating position cannot overcome the unreasonableness of the underlying agency action. As such, the government's overall conduct cannot be held substantially justified.

### B. Amount of Recovery

 Defendant objects to any recovery for fees and expenses incurred prior to the filing of plaintiff's complaint on January 30, 2004.[3] During this time, plaintiff initially filed suit in the United States District Court for the Northern District of Florida. After the dis-

---

2. While GAO decisions in procurement cases are not binding on the court, the court may accord deference in recognition of their special expertise. *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991) (citing *Honeywell, Inc. v. United States,* 870 F.2d 644, 647–648 (Fed.Cir. 1989)); *Howell Constr., Inc. v. United States,* 12 Cl.Ct. 450, 452 (1987).

3. Plaintiff's complaint included fees during this period in the amount of $10,556.31. In response to defendant's objections, plaintiff reduced its claim by $4,951.68 for work that it contends was performed solely for litigation in district court. The remaining district court fees and expenses now before the court amount to $5,604.63.

trict court dismissed plaintiff's complaint, Keeton filed suit in the United States Court of Federal Claims. The EAJA extends "only to fees and other expenses incurred before a court ... having the power to hear and decide the underlying civil action in which the EAJA applicant incurred those fees and other expenses." *Burkhardt v. Gober*, 232 F.3d 1363, 1367 (Fed.Cir.2000); 24 U.S.C. § 2412(d)(1)(A). According to the government, plaintiff is only entitled to recovery for work performed during the course of the present litigation before this court. Defendant correctly points out that "expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court ... cannot be awarded under the EAJA." *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir.1987).

■ Plaintiff argues that its case could readily have been filed in this court first and therefore the legal work was performed equally for the current litigation. However, the United States Court of Federal Claims has previously rejected this argument made under similar circumstances. *See Lion Raisins*, 57 Fed.Cl. at 516. In *Lion Raisins*, the EAJA applicant argued that work performed for district court litigation would have been done anyway if it had first filed in the Court of Federal Claims. The court held that the "Federal Circuit's pointed statement in *Oliveira* ... prohibits the court from awarding fees in proceedings that take place in other fora." *Lion Raisins*, 57 Fed.Cl. at 516 (citation omitted). Therefore, Keeton is not entitled to recovery of $5,604.63 for work that was performed in connection with litigation before the United States District Court for the Northern District of Florida.[4] However, plaintiff is entitled to recover for work in preparing the EAJA application in the amount of $4,949.75 in fees and $75.27 in expenses. *See Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir.1985).

■ Finally, defendant argues that the court "should pro-rate any award based upon the degree of the total claim recovered at trial." Def.'s Opp'n to Pl.'s Application for Fees and Expenses Pursuant to the Equal Access to Justice Act ("Def.'s Opp'n") at 11. Defendant maintains that Keeton did not obtain a significant amount of relief because the court denied its motion for a temporary restraining order ("TRO") and a preliminary injunction. The government also points out that the court did not order the BOP to transfer any inmates to Keeton's facility. Thus, the government contends that because plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Cmty. Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1146 (Fed.Cir.1993). However, it is possible to achieve more than partial or limited success even where an applicant did not receive all of the relief requested. *See Naekel v. Dep't of Transp., FAA*, 884 F.2d 1378, 1379 (Fed.Cir.1989). Instead, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. In this regard, "[w]here a plaintiff has achieved excellent results, his attorney should recover a fully compensatory fee." *Id.* There is no mathematical formula for making such a determination and it is within the court's discretion. *Id.* at 436–37, 103 S.Ct. 1933. "This discretion authorizes the trial court to consider a wide variety of factors, including the conduct of the parties during trial, in reaching its costs decision." *Neal & Co. v. United States*, 121 F.3d 683, 687 (Fed.Cir.1997) (citing *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed.Cir.1996)).

In denying plaintiff's request for a TRO and preliminary injunction, the court remanded to the BOP because the agency had failed to point to anything in the administrative record explaining its apparent decision that purchase orders were illegal. Thus, the

---

4. Even in the circumstance where, unlike here, a case is transferred to this court pursuant to 28 U.S.C. § 1631, the Federal Circuit has affirmed withholding recovery of attorney fees and legal expenses for litigation before the court from which it was transferred. *Oliveira*, 827 F.2d at 741.

court could not reach a determination on plaintiff's likelihood of success on the merits. As the court stated, "the director's findings contain no explanation that the purchase orders were illegal. In fact, he does not even address the possibility of continued purchase orders." *Keeton Corr., Inc. v. United States,* No. 04–132C, slip op. at 4 (Feb. 13, 2004) (order denying TRO and preliminary injunction). The court also agreed with plaintiff that the BOP's argument that it could not continue with sole source purchase orders was not supported by the factual record. *Id.* at 6. Although plaintiff did not initially succeed in obtaining an injunction, it was ultimately successful on its substantive goal when the court granted declaratory judgment and reinstated the automatic stay. *See Hensley,* 461 U.S. at 435, n. 11, 103 S.Ct. 1933 (Holding that a "plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."). The court ultimately agreed with the argument made by plaintiff's TRO motion that it "does not seem logical that an agency could rely on the existence of a stayed contract to preclude continued sole source purchase orders which, in turn, would then create the urgent and compelling circumstances that would allow an override of the stay." *Keeton I,* 59 Fed.Cl. at 756. The issues raised by plaintiff at the preliminary injunctive phase were intertwined with its motion for declaratory judgment. Given that fact, it is reasonable to conclude that the effort spent at the preliminary injunctive phase contributed to plaintiff's ultimate success and resulted in fewer hours at the later stage of litigation. Therefore, defendant's claim that an EAJA reward should be prorated by 50% is without merit.

Plaintiff has also requested a COLA applied to the $125 hourly cap provided for under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). Keeton contends that it is justified because the cost of living has increased from when the $125 limit was enacted in March 1996 to the present day, as measured by the Department of Labor's Consumer Price Index ("CPI"). Although defendant contends that plaintiff should re-ceive only a pro-rata portion of its fees and expenses, it has not specifically opposed a COLA adjustment to plaintiff's hourly rate. An increase to plaintiff's hourly rate is within the court's discretion. *See Oliveira,* 827 F.2d at 742. The "justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')." *California Marine Cleaning, Inc. v. United States,* 43 Fed.Cl. 724, 733 (1999); *Lion Raisins,* 57 Fed.Cl. at 519. In this case, plaintiff has met the requirements and is entitled to a COLA to the statutory cap imposed in the EAJA.

## CONCLUSION

Accordingly, it is **ORDERED:**

(1) Plaintiff's Motion for an Award of Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act is **GRANTED–IN–PART** and **DENIED–IN–PART** and the clerk of the court shall enter judgment in the amount of $23,838.69 in fees and $2,282.41 in expenses.